The plaintiff claimed under the elder grant. The defendant, for the purpose of showing his claim of title, produced in evidence a grant younger than that of the plaintiff, and the following entry, which was the foundation of it: —
"Samuel Long enters five thousand acres on the south side of Duck River, in Green County, beginning at General Green's southwest corner and running south and east for quantity. 27th October, 1783."
The plaintiff then produced the following entry, upon which his grant was founded, older in date than the entry of the defendant: —
"Alexander Martin enters two thousand acres, lying on the first large creek running into Duck River, on the south side, below General Green's survey, including a lick on the creek known by the name of Prewitt's Lick, near the centre of a survey. 18th October, 1783."
This entry was made under a particular law of North Carolina, which directed that Martin's land *Page 129 
should lie adjacent to the military boundary line. It was surveyed ten or fifteen miles from the boundary.
Several witnesses proved the notoriety of the large creek spoken of in the plaintiff's entry; and some testimony was introduced in relation to the notoriety of Prewitt's Lick. General Green's survey was proved to have been notorious before the date of the plaintiff's entry.
The North Carolina Legislature authorized Alexander Martin, under whom the lessor of the plaintiff derives title, to enter 2,000 acres of land adjacent to the military boundary. It does not seem to the Court that the Legislature intended, by this expression, to compel Martin to adjoin the line. Adjacent, strictly speaking does not mean adjoining; it means that it shall be in the neighborhood, or convenient, or near to the place mentioned in the Act. The Act did not make a location of the land; it only in substance required that when It was made it should lie near to the military line.
If the jury should be of opinion that Prewitt's Lick was notorious at the time the entry of the plaintiff was made, the entry is good. And besides, it may be remarked, that a call in an entry may be made good by description as well as notoriety. If objects are called for by description, and that description is insufficient, the entry then can only be made good, by establishing the notoriety of the object. But if the description is good, and is such as will reasonably lead a subsequent locator to the object, the entry is good although the object may not be notorious. Upon this idea, suppose we discard altogether that part of the entry which mentions the name of the lick; will not the entry still be good? There is but one lick proved to be upon the creek. General Green's survey was well known, and the creek was well known. These are called for in the entry as a description, which may lead to ascertaining the place where Martin made his entry. It seems to the Court that a subsequent enterer could, with reasonable diligence, having this description before him, have found the lick; and when he found the lick, he would have known *Page 130 
that it was the place where the entry had been made.
It has been objected that the plaintiff's survey is made in an oblong; whereas it ought to have been made in a square. We believe that the law authorized surveys to be made either in a square or oblong when the calls were indefinite. If there should be a call, seeming to exclude the idea of an oblong figure, then it ought to be surveyed in a square. In this ease, the survey is in an oblong, including the lick in the centre, and we believe there can be no legal objection to it.